## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| GREAT AMERICA PAC,<br>STOP HILLARY PAC, and<br>RONALD R. JOHNSON,<br><br>                 *Plaintiffs,*<br><br>        v.<br><br>WISCONSIN ELECTIONS COMMISSION,<br>and MICHAEL HAAS, in his official capacity<br>as ADMINISTRATOR OF THE WISCONSIN<br>ELECTION COMMISSION,<br><br>                 *Defendant.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## VERIFIED COMPLAINT

This lawsuit seeks to enjoin a recount that—like the ill-fated Florida recount the Supreme Court enjoined in *Bush v. Gore*, 531 U.S. 98 (2000) (per curiam)—fails to satisfy Equal Protection requirements, threatens to extend past the federally specified "safe harbor" deadline for choosing presidential electors, and—particularly in conjunction with other baseless recounts sought by a candidate who did not win a single presidential elector—may unjustifiably cast doubt upon the legitimacy of President-Elect Donald J. Trump's victory.

## PARTIES

1.      Plaintiff Great America PAC ("GAP") is a non-connected hybrid federal political committee registered with the U.S. Federal Election Commission ("FEC"). Its purpose is to bring people together and unite them behind Donald Trump and the movement he represents. GAP also seeks to protect the integrity of the electoral process, uphold constitutional protections concerning elections, and ensure that every validly cast ballot from eligible voters are properly counted. GAP has tens of thousands of contributors, members, and supporters; among them are numerous Wisconsin voters who cast votes for President in the November 2016 general election ("Election").

1

2.      Plaintiff Stop Hillary PAC ("SHP") is a non-connected hybrid federal political committee registered with the U.S. Federal Election Commission ("FEC").  SHP is dedicated to protecting American freedom and fostering the American economy by preventing the election of Hillary Rodham Clinton and combatting her disastrous policies.  SHP has created a special project, the Committee to Defend the President, which focuses on supporting President-Elect Trump, helping to protect him from baseless attacks on his presidency such as the pending recount request, and rallying grassroots support behind him.

3.      Plaintiffs GAP and SHP have members, supporters, and contributors who are registered Wisconsin voters and participated in the 2016 general election for President.  GAP and SHP assert both associational standing to enforce the rights of those members, as well as organizational standing to promote and protect their own institutional interests.

4.      Plaintiff Ronald R. Johnson is a registered Wisconsin voter who voted in the 2016 general election for President of the United States.

5.      Defendant Wisconsin Elections Commission ("WEC") is a state agency responsible for administering laws relating to elections and election campaigns pursuant to Wis. Stat. § 5.05(1).

6.      Defendant Michael Haas is the Administrator of the WEC.  As such, he is the Chief Election Officer of the state.  Wis. Stat. § 5.05(3d).

## JURISDICTION

7.      This case presents constitutional claims under the Equal Protection Clause of the Fourteenth Amendment.  U.S. Const., amend. XIV, § 1.  This Court therefore has federal-question jurisdiction under 28 U.S.C. § 1331.

## VENUE

8.      Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to the claim occurred here.

## BACKGROUND

9.      On November 8, 2016, Wisconsin held a general election for President of the United States.

10.     Based on the official canvass,  Defendant WEC reports the following results:

    a.      Donald Trump, of the Republican Party, received 1,404,000 votes (47.19%)

    b.      Hillary Clinton, of the Democratic Party, received 1,381,823 votes (46.44%)

    c.      Gary Johnson, of the Libertarian Party, received 106,585 votes (3.58%)

    d.      Jill Stein, of the Green Party, received 31,006 votes (1.04%)

    e.      Evan McMullin, an Independent candidate, received 9,998 votes (0.34%) as a write-in candidate.

    f.      Darrell L. Castle, of the Constitution Party, received 12,156 votes (0.41%)

    g.      Monica Morehead, an Independent candidate, received 1,769 votes (0.06%)

    h.      Rocky Roque de le Fuente, an Independent candidate, received 1,514 votes (0.05%)

    i.      Cherunda Fox, an Independent candidate, received 44 votes as a write-in candidate (0%)

11.     Independent candidate Rocky Roque de la Fuente filed a request for a recount of the 2016 general election results for the office of President, but withdrew that request on or about Tuesday, November 29, 2016.

12.     On or about Friday, November 25, 2016, Green Party candidate Jill Stein who received 1.04% of the vote, filed a request for a recount with the WEC.

13.     The recount will be conducted in a manner that violates the requirements set forth by the U.S. Supreme Court in *Bush v. Gore*, 531 U.S. 98 (2000) (per curiam), for recounts in

3

Presidential elections.  Because Wisconsin law lacks adequate protections to ensure that similarly completed ballots will be afforded similar treatment, both within the same county and across different counties, the recount should be enjoined to prevent further Equal Protection violations from tainting the outcome of the election.

14.     Moreover, the recount threatens to extend past the congressionally enacted "safe harbor" deadline of December 13, 2016.  *See* 3 U.S.C. § 5.  Because there is no reasonable assurance the recount can accurately and carefully be conducted within that timeframe, this Court should enjoin the recount to prevent careless mistakes from tainting the results of the election, or incomplete or partial results to cast a pall over President-Elect Trump's victory.

**COUNT ONE**
**EQUAL PROTECTION**

15.     Plaintiffs hereby incorporate by reference and re-allege the preceding allegations.

16.     The Equal Protection Clause provides, "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const., amend. XIV, § 1.

17.     In *Bush v. Gore*, 531 U.S. 98, 104 (2000) (per curiam), the Supreme Court held that once states decide to allocate their presidential electors (i.e., members of the electoral college) based on the outcome of the popular vote, "the right to vote as the legislature has prescribed is fundamental," and protected by the Equal Protection Clause.

18.     The Court added, "Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another."  *Id.* at 104-05.

19.     The Court entered an injunction prohibiting the State of Florida from recounting the votes in the 2000 Presidential election on the grounds that the state law standards for determining whether certain ballots were validly cast were too vague and indeterminate.  A substantial risk existed that different counties, or different election officials within the same county, would treat

identical-looking ballots differently.  Because the State's "recount mechanisms . . . do not satisfy the minimum requirement of non-arbitrary treatment of voters necessary to secure the fundamental right to vote," they violated Equal Protection requirements and the recount was held unconstitutional.  *Id.*

20.     The Court further held that simply directing election officials to ascertain "the intent of the voter" provided insufficient guidance for conducting a recount.  *Id.* at 105.  The Court held that, "in the absence of specific standards" to ensure the "equal application" of this standard, "specific rules" must be promulgated to "ensure uniform treatment."  *Id.* at 106.

21.     Likewise, here, the standards Wisconsin election officials will use in conducting the recount do not satisfy Equal Protection requirements.  As in Florida, rather than establishing detailed, specific standards for counting votes, state law more generally requires election officials to determine "the electors' intent," so far as it "can be ascertained from the ballots notwithstanding the informality or failure to fully comply" with other provisions of the election code.  Wis. Stat. § 7.50(2).

22.     The ballot-counting standards the WEC and county officials will be using to conduct the recount for votes not cast on electronic voting machines are inadequate in four main ways:

a.      The Supreme Court already held that the "intent of the voter" standard upon which Wis. Stat. § 7.50(2) is based is unconstitutionally vague and indeterminate, thereby leading to Equal Protection violations.

b.      Section 7.50(2) leaves it to election officials to determine, on a case-by-case or county-by-county basis, whether an "informality" or a "failure to fully comply" with election law undermines the purported intent of the voter to the degree that the ballot must be rejected.

c.      Wis. Stat. § 7.50(2)(c) (emphasis added) provides, "If an elector marks a ballot with a cross (X), or any other marks, as |, A, V, O, /, ü, +, within the square to the right of a candidate's name, or any place within the space in which the name appears, *indicating an intent to vote for that candidate*, it is a vote for the candidate whose name it is opposite."   Yet the law provides no guidance for election officials to use to determining whether a "cross" or "other mark"

actually "indicat[es] an intent to vote for that candidate." *Id.* In short, it is left to election officials' individual discretion, or counties' decisions, as to whether crosses or other marks adjacent to a candidate's name do not "indicat[e] an intent to vote for that candidate."

       d.     Wis. Stat. § 7.50(2)(cm) (emphasis added) provides, "Any apparent erasure of a mark next to the name of a candidate may not be counted as a vote for that candidate ***if the elector makes another mark next to the name of one or more different candidates for the same office*** and counting of the mark would result in an excess number of votes cast for the office." This poorly drafted provision creates ambiguities that reasonably may lead different election officials within the same county, or different counties, to treat identically marked ballots differently. The law states that, if a mark on a ballot is erased, the mark shall not be counted as a vote for the adjacent candidate "if the elector makes another mark" near another candidate's name. *Id.* The law does not address how a ballot should be treated if a voter makes an "apparent erasure" without marking another candidate's name. The statute reasonably may be read as implying that, unless the voter makes a new mark near another candidate's name, the apparently erased mark still should count as a vote for the adjacent candidate. Conversely, some election officials may simply choose to disregard apparent erasures and not count them as valid votes at all.

       23.     In short, the absence of sufficient standards to ensure that identically marked ballots are afforded equal treatment, both within a county and across counties, means that the recount cannot proceed in a manner that satisfies the Equal Protection Clause.

       24.     Because there is not sufficient time to promulgate new regulations to allow the recount to be conducted in a constitutionally valid manner prior to the safe harbor deadline, as in *Bush v. Gore*, this Court should enjoin the recount to prevent further constitutional violations from occurring.

       WHEREFORE, Plaintiffs pray for injunctive and declaratory relief and such other relief as this Court may deem appropriate.

COUNT TWO
DUE PROCESS

25.     Plaintiffs hereby incorporate by reference and re-allege the preceding allegations.

26.     The Due Process Clause of the Fourteenth Amendment provides, "No State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const., amend. XIV, § 1.

27.     The Due Process Clause protects fundamental rights, such as the fundamental right to vote when state legislatures have chosen to allocate presidential electors based on the outcome of the popular vote. *See Bush*, 531 U.S. at 104.

28.     3 U.S.C. § 5 provides:

> If any State shall have provided, by laws enacted prior to the day fixed for the appointment of the electors, for its final determination of any controversy or contest concerning the appointment of all or any of the electors of such State, by judicial or other methods or procedures, and such determination shall have been made at least six days before the time fixed for the meeting of the electors, such determination made pursuant to such law so existing on said day, and made at least six days prior to said time of meeting of the electors, shall be conclusive, and shall govern in the counting of the electoral votes as provided in the Constitution, and as hereinafter regulated, so far as the ascertainment of the electors appointed by such State is concerned.

29.     As applied to the 2016 election, this statute "requires that any controversy or contest that is designed to lead to a conclusive selection of electors be completed by December [13]." *Bush*, 531 U.S. at 110.

30.     Like the State of Florida in *Bush v. Gore*, 531 U.S. at 110, the Wisconsin legislature has manifest its intent that the State comply with this deadline. *See* Wis. Stat. § 7.75.

31.     The WEC Director—the state's Chief Election Officer—has publicly declared that he is "concerned that some counties will be challenged to finish on time." Martha Ann Overland, *Wisconsin Agrees to Presidential Vote Recount at Third-Party Candidates' Request*, NPR.org (Nov. 25, 2016 3:02 P.M. ET), http://www.npr.org/sections/thetwo-way/2016/11/25/503349326/people-have-donated-millions-to-jill-steins-recount-campaign-is-it-worth-it (attached as Exh. 1).

32.     "It took nearly a month to complete the [statewide] recount in the April 2011 Wisconsin Supreme Court race between Justice David Prosser and JoAnne Kloppenburg."  Jason Stein & Patrick Marley, *Stein Sues After Wisconsin Refuses to Order Hand Recounts*, MILWAUKEE J.-SENT.  (Nov.  29,  2016,  10:43  A.M.),  http://www.jsonline.com/story/news/politics/elections/2016/11/28/elections-staff-layout-recount-timeline/94539210/ (attached as Exh. 2).  This election, in contrast, involves almost twice as many ballots, and only half as much time in which to recount them. *Id.*

33.     Particularly in light of the state's experience with the Prosser recount, there is a substantial likelihood that the recount will not be complete by the safe harbor deadline of December 13.  Failure to satisfy this deadline will undermine the right to vote of Plaintiff Johnson and all other Wisconsin voters, by leaving it to the U.S. Congress to determine whether to accept the slate of electors chosen pursuant to their votes. *See* U.S. Const. amend. XII.

34.     Furthermore, as local jurisdictions rush to meet this deadline at quadruple the pace of the Prosser recount (twice as many votes in half as much time), an unreasonable risk of error will be introduced into the process.  The fundamental right to vote of Plaintiff Johnson and all other Wisconsin voters will be jeopardized by the state's inability to ensure proper safeguards and accurate counting in this chaotic, highly compressed timeframe.  Moreover, any such errors may cast an unjustified pall over the election of President-Elect Trump, undermining public confidence in the integrity of the electoral process.

WHEREFORE, Plaintiffs pray for injunctive and declaratory relief and such other relief as this Court may deem appropriate.

### COUNT THREE
### 42 U.S.C. § 1983

35.     Plaintiffs hereby incorporate by reference and re-allege the preceding allegations.

36.    42 U.S.C. § 1983 provides, "Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights . . . secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

37.    For the reasons discussed above, Defendants have violated, and pose a substantial risk of violating:

      a.    the Equal Protection and Due Process rights of Plaintiff Henderson;

      b.    the Equal Protection and Due Process rights of Wisconsin voters who participated in the 2016 presidential general election and are members, contributors, and supporters of GAP and/or SHP, whose interests GAP and/or SHP assert associational standing to enforce; and

      c.    the Equal Protection and Due Process rights of Wisconsin voters who participated in the 2016 presidential general election, whose rights GAP and SHP assert organizational standing to enforce as part of their respective missions.

WHEREFORE, Plaintiffs pray for injunctive and declaratory relief and such other relief as this Court may deem appropriate.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs pray for the following relief:

1.     A declaratory judgment that:

     a.     The standards set forth in Wis. Stat. § 7.50 violate the Equal Protection Clause as applied to the presidential recount.

     b.     The circumstances under which the recount is being conducted run an intolerable risk of violating the fundamental Due Process right to vote, by introducing too great of a probability of error into the process.

     c.     The recount threatens to violate the fundamental Due Process right to vote by extending past the statutory safe harbor deadline, with which the Wisconsin legislature has expressed its desire to comply.

2.     A temporary restraining order, preliminary injunction, and permanent injunction prohibiting any recount of votes in the 2016 presidential election in the State of Wisconsin from proceeding;

3.     Costs and attorneys' fees pursuant to 42 U.S.C. § 1988; the Equal Access to Justice Act, 28 U.S.C. § 2412; or any other applicable provisions; and

4.     Such other relief as this Court deems just and appropriate.

Dated this 1st day of December, 2016.

                      Respectfully submitted,

                       /s/ Jay E. Heit
                      Jay E. Heit (#1026582)
                      Matthew Z. Kirkpatrick (#1101068)
                      Attorneys for Plaintiffs
                      Herrick & Hart S.C.
                      116 W. Grand Ave.
                      Eau Claire, WI  54703
                      Telephone: (715) 832-3491
                      Email: jay@eauclairelaw.com

## VERIFICATION

I, Ronald R. Johnson, declare under penalty of perjury that the foregoing is true and correct to the best of my personal knowledge. Executed on December 1, 2016.

_/s/ Ronald R. Johnson_____

Ronald R. Johnson