UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

GREAT AMERICA PAC, )
STOP HILLARY PAC, and )
RONALD R. JOHNSON, )
 )
 )
            *Plaintiffs*, )
 )
        v. )
 )
WISCONSIN ELECTIONS COMMISSION, )
and MICHAEL HAAS, in his official capacity )
as ADMINISTRATOR OF THE WISCONSIN )
ELECTION COMMISSION, )
 )
            *Defendant*. )
 )

## MEMORANDUM OF SUPPORT IN PLAINTIFFS' EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER

This Court should grant Plaintiffs' emergency motion for a Temporary Restraining Order ("TRO") enjoining the ongoing recount. The recount threatens to violate the Equal Protection rights of Plaintiff Ronald R. Johnson, as well as other Wisconsin voters,[1] in direct violation of the Supreme Court's holding in *Bush v. Gore*, 531 U.S. 98 (2000) (per curiam). The recount likewise threatens the fundamental Due Process right to vote of Johnson and other Wisconsin voters in two ways: (i) there is a realistic risk it may not be completed by the "safe harbor" deadline set forth in 3 U.S.C. § 5, with which the Wisconsin legislature has manifested its desire to comply, *see* Wis. Stat. § 7.75, thereby empowering Congress to disregard the votes cast by Johnson and other voters; (ii) the chaotic rushing necessary to meet the safe harbor deadline creates an imminent,

---

[1] Plaintiffs Great American PAC ("GAP") and Stop Hillary PAC ("SHP") have associational standing to assert the voting rights of their members, contributors, and/or supporters who are Wisconsin voters. *See Summers v. Earth Island Inst.*, 432 U.S. 333, 343-44 (1977); *Warth v. Seldin*, 422 U.S. 490, 511 (1975).

1

unreasonable risk of error that can lead to votes being erroneously counted, disregarded, or diluted, *cf. Anderson v. United States*, 417 U.S. 211, 226 (1974); *Reynolds v. Sims*, 377 U.S. 533, 555 (1964).

## EQUITABLE FACTORS FAVOR INJUNCTIVE RELIEF

All of the traditional equitable requirements for injunctive relief are satisfied. *See generally Winter v. Nat. Res. Defense Coun.*, 555 U.S. 7, 20 (2008). First, voters such as Plaintiff Johnson will suffer irreparable injury from violation of their fundamental right to vote under the Due Process and Equal Protection Clauses. Second, as discussed in the next Section, Plaintiffs are likely to succeed on the merits of their claims. Third, the balance of hardships tilts sharply in favor of preventing a rushed, error-prone recount, particularly if it is being conducted under unconstitutionally vague and indeterminate standards. Finally, the public has a strong interest in preventing a chaotic, rushed recount—particularly one conducted pursuant to constitutionally impermissible standards—and an even stronger interest in enjoining a procedure that poses a risk of causing the state to miss the "safe harbor" deadline.

The equities weigh particularly strongly in favor of enjoining the recount as the surrounding circumstances strongly suggest it is nothing more than a sham. The candidate who requested the recount, Jill Stein, received 31,006 votes in Wisconsin out of nearly 3 million cast—approximately 1.04%. She did not come close to winning in any state, and did not receive a single electoral vote. There is no prospect that the recount will change the outcome of the election with result to Stein. At best, this is nothing more than a fundraising stunt for her. *See* Kerry Close, *Jill Stein Raised More Money for Her Recount Effort Than She Did During the Election*, TIME, Nov. 28, 2016, http://time.com/money/4584102/jill-stein-recount-fundraising-election-wisconsin-michigan-pennsylvania.

At worst, Stein is acting as a stalking horse for candidate Hillary Clinton, whose campaign has publicly announced it will "participate" in the Wisconsin recount. *See* Matt Zapotosky, *Clinton Campaign Will Participate in Wisconsin Recount, with an Eye on "Outside Interference" Lawyer Says*, WASH. POST, Nov. 26, 2016, https://www.washingtonpost.com/news/post-nation/wp/2016/11/26/clinton-campaign-will-participate-in-wisconsin-recount-with-an-eye-on-outside-interference-lawyer-says/?utm_term=.cd653f1b960c. Having declined to incur the political costs and public opprobrium of seeking a recount in her own name, especially after conceding, Clinton should not be permitted to hide behind an undisputedly failed candidate to continue her Sisyphean campaign. In short, the recount cannot possibly affect the outcome of the election with regard to Stein, and Clinton willfully declined to request one. Thus, the public's strong interest in the finality of the presidential election counsels in favor of enjoining this pointless, rushed endeavor that can only trigger new constitutional violations, jeopardize Wisconsin's compliance with the federal safe harbor deadline, and undermine public confidence in the election's outcome, casting an unjustified pall over the President-Elect's incoming Administration.

## PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS

Plaintiffs are likely to succeed on the merits of both their Equal Protection and Due Process claims.[2]

**Equal Protection**—In *Bush v. Gore*, 531 U.S. 98, 111 (2000) (per curiam), the Supreme Court enjoined Florida's ongoing recount of votes in the Presidential election because it was being conducted pursuant to standards that did not satisfy the Equal Protection Clause, U.S. Const.,

---

[2] Plaintiffs have brought these claims both directly (Counts I and II) and as components of a claim under 42 U.S.C. § 1983 (Count III).

amend. XIV, § 1. Florida law directed that votes should be counted based on the apparent "intent of the voter." *Bush*, 531 U.S. at 105. The Court held that this standard was too general and vague to ensure that similarly marked ballots would be afforded the same treatment, both "from county to county" and "within a single county from one recount team to another." *Id.* at 106. The Equal Protection Clause required that the recount be conducted pursuant to "specific rules designed to ensure uniform treatment" of ballots.

The rules Wisconsin is applying in its recount suffer from comparable constitutional deficiencies. As in Florida, Wisconsin's main directive is to attempt to ascertain "the elector's intent," even when a voter has "fail[ed] to fully comply" with applicable legal requirements governing the voting process. Wis. Stat. § 7.50(2). This standard provides for even greater indeterminacy than Florida—election officials are left with little more than subjective, *ad hoc*, case-by-case judgments for deciding when votes that violate statutory requirements should be counted pursuant to the voters' intent, and when those violations preclude counting a ballot.

Although Wisconsin has several other statutory provisions dealing with voter intent, almost all of them deal exclusively with write-in votes, *see* Wis. Stat. § 7.50(2)(d)-(j) and are of little relevance in dealing with ballots counted for Trump, Clinton, or Stein, none of whom were write-in candidates. Indeed, far from clarifying § 7.50(2)'s constitutionally infirm directive to ascertain the will of the voter, its remaining subsections simply exacerbate the law's indeterminacy. For example, Wis. Stat. § 7.50(2)(c) (emphasis added) provides, "If an elector marks a ballot with a cross (X), or any other marks, as |, A, V, O, /, ü, +, within the square to the right of a candidate's name, or any place within the space in which the name appears, ***indicating an intent to vote for that candidate***, it is a vote for the candidate whose name it is opposite." Yet the law provides no guidance for election officials to use to determining whether a "cross" or "other mark" actually

"indicat[es] an intent to vote for that candidate." *Id.* In short, it is left to election officials' individual discretion, or counties' decisions, as to whether crosses or other marks adjacent to a candidate's name do not "indicat[e] an intent to vote for that candidate."

Likewise, Wis. Stat. § 7.50(2)(cm) (emphasis added) states, "Any apparent erasure of a mark next to the name of a candidate may not be counted as a vote for that candidate ***if the elector makes another mark next to the name of one or more different candidates for the same office*** and counting of the mark would result in an excess number of votes cast for the office." This poorly drafted provision creates ambiguities that reasonably may lead different election officials within the same county, or different counties, to treat identically marked ballots differently. The law specifies that, if a mark on a ballot is erased, the mark shall not be counted as a vote for the adjacent candidate "if the elector makes another mark" near another candidate's name. *Id.* It does not address how a ballot should be treated if a voter makes an "apparent erasure" without marking another candidate's name. This provision reasonably may be read as implying that, unless the voter makes a new mark near another candidate's name, the apparently erased mark still should count as a vote for the adjacent candidate. Conversely, some election officials may simply choose to disregard apparent erasures and not count them as valid votes at all.

For all these reasons, as in *Bush*, 531 U.S. at 104-05, the absence of sufficient standards to ensure that identically marked ballots are afforded equal treatment, both within a county and across counties, means that the recount cannot proceed in a manner that satisfies the Equal Protection Clause. This Court should therefore enjoin it from continuing.

**Due Process**—The ongoing recount also poses a substantial risk to the fundamental Due Process right of voters to have their vote be "given full value and effect, without being diluted or distorted" by fraudulent or incorrectly counted ballots. *Anderson v. United States*, 417 U.S. 211,

226 (1974); *see also Reynolds v. Sims*, 377 U.S. 533, 555 (1964). The last statewide recount in Wisconsin occurred in 2011, in the Wisconsin Supreme Court race between Justice David Prosser and JoAnne Kloppenburg. Verified Compl. Exh. 2. It took a month to conduct that recount accurately. This race, in contrast, involves double the number of votes, but there is only half as much time available before the statutory safe harbor deadline of December 13. In short, based on this state's recent past experience, a recount is likely to be rushed, chaotic, and pose too great a risk of erroneously counting invalid votes, disregarding valid votes, or attributing valid votes to the wrong candidate. Under these circumstances, a recount poses too great a risk to the fundamental right to vote—particularly when it is being conducted at the behest of a candidate who received 1% of the vote.

The other due process concern is that Defendant Haas has admitted there is a risk that the recount might not be concluded by the safe harbor deadline, *see* Verified Compl. Exh. 1, and any efforts to further rush to meet that deadline will simply exacerbate the already substantial risk of error inherent in this already harried process. In the event the state fails to meet that deadline, then the U.S. Congress will be free to disregard the slate of electors chosen as a result of the November election, thereby effectively nullifying the properly cast votes of Plaintiff Johnson and millions of other Wisconsin voters. In short, fundamental due process concerns independently warrant enjoining this hurried, wholly unnecessary process.

## CONCLUSION

For these reasons, Plaintiffs respectfully request that this Court grant their Motion for a Temporary Restraining Order.

                                                        Respectfully submitted,

                                                        /s/ Jay E. Heit
                                                        Jay E. Heit (#1026582)
                                                        Matthew Z. Kirkpatrick (#1101068)
                                                        Attorneys for Plaintiffs
                                                        Herrick & Hart S.C.
                                                        116 W. Grand Ave.
                                                        Eau Claire, WI 54703
                                                        Telephone: (715) 832-3491
                                                        Email: jay@eauclairelaw.com