UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

* * * * * * * * * * * * * * * * * * * * * * * * * * *

GREAT AMERICA PAC, STOP HILLARY
PAC and RON JOHNSON,

       Plaintiffs,

-vs-                                  Case No. 16-CV-795-JDP

WISCONSIN ELECTIONS COMMISSION,   Madison, Wisconsin
and MICHAEL HAAS, in his official December 9, 2016
capacity as Administrator of the  9:08 a.m.
WISCONSIN ELECTION COMMISSION,

       Defendants.

* * * * * * * * * * * * * * * * * * * * * * * * * * *

STENOGRAPHIC TRANSCRIPT OF INJUNCTIVE HEARING
HELD BEFORE THE HONORABLE JAMES D. PETERSON,


APPEARANCES:

For the Plaintiffs:
          Coolidge-Reagan Foundation
          BY:  MICHAEL MORLEY
          1629 K Street, Ste. 300
          Washington, DC  20013

          Herrick & Hart
          BY:  JAY HEIT
             MATTHEW KIRKPATRICK
          116 West Grand Avenue
          Eau Claire, Wisconsin  54701

          DB Capitol Strategies PLLC
          BY:  DAN BACKER
          203 South Union Street, Ste. 300
          Alexandria, Virginia  22314

Lynette Swenson    RMR, CRR, CRC
U.S. District Court Federal Reporter
120 North Henry Street, Rm. 520
Madison, Wisconsin  53703
608-255-3821

For the Defendants:
                    Department of Justice
                    BY: SEAN MICHAEL MURPHY
                        THOMAS BELLAVIA
                        COLIN ROTH
                        DAVID MEANY
                    17 West Main Street
                    Madison, Wisconsin  53703

For Intervenor Jill Stein:
                    Friebert, Finerty & St. John
                    BY:  CHRISTOPHER MEULER
                    330 East Kilbourn Avenue, Ste. 125

                    Milwaukee, Wisconsin  53202

                    Emery Celli Brinkerhoff & Abady LLP
                    BY:  DAVID LEBOWITZ
                        DEBRA GREENBERGER
                    600 5th Avenue, Floor 10
                    New York, New York  10020-2323


                         *  *  *  *  *

        (Proceedings called to order.)

            THE CLERK:  Case No. 16-CV-795-JDP.  *Great
America PAC, et al. v. Wisconsin Elections Commission,
et al.*  Court is called for injunctive hearing.  May we
have the appearances, please.

            THE COURT:  Let's find out who we have on behalf
of the plaintiffs.

            MS. MORRISON:  Good morning, Your Honor.
Michael Morley.  Michael Morley for the plaintiffs.

            MR. HEIT:  Along with Jay Heit.  Herrick & Hart,
Eau Claire.

            THE COURT:  Okay.

1          MR. KIRKPATRICK:  Matthew Kirkpatrick of Herrick

2  & Hart, Eau Claire.

3          MR. BACKER:  Dan Backer.

4          THE COURT:  All right.  And who do we have on

5  behalf of the Wisconsin Election Commission?

6          MR. MURPHY:  Morning, Your Honor.  My name is

7  Mike Murphy from the Wisconsin Department of Justice.  To

8  my left is Attorney Tom Bellavia.  And behind me to the

9  far right is David Meany.  And in the center is Colin

10  Roth.

11          THE COURT:  All right.  Good morning to all of

12  you.  And on behalf of the intervening party Jill Stein?

13          MR. MEULER:  Chris Meuler of Friebert, Finerty &

14  St. John.  Alongside David Lebowitz.

15          THE COURT:  Okay.

16          MS. GREENBERGER:  I'm Debbie Greenberger from

17  Emery Celli Brinkerhoff & Abady.

18          THE COURT:  Okay.  And so who's the point

19  for you?  I assume it's Mr. Murphy on behalf of the

20  Wisconsin Election Commission?  Who's got the point for

21  you?

22          MS. GREENBERGER:  I do, Your Honor.

23  Ms. Greenberger.

24          THE COURT:  Okay.  Very good.  Okay.  And then

25  who's on the hot seat for the plaintiffs?

1          MR. MORLEY:  I am, Your Honor.

2          THE COURT:  All right.  Very good.  All right.

3    I'll start with you, Mr. Murphy.  I don't know if you

4    noticed, but ten minutes ago or so I got a reply brief

5    offered by the plaintiffs.  I'll grant the motion to file

6    the brief, so I'll accept that reply brief; gave it a

7    quick read.  Mr. Murphy, what do you -- have you had a

8    chance to read it?

9          MR. MURPHY:  Since I've been sitting here I

10   would say that I've skimmed it.

11         THE COURT:  Okay.

12         MR. MURPHY:  I think that it was -- I think that

13   it wisely drops the Equal Protection arguments.  I think

14   those were nonstarters.  Beyond that, I think what we

15   have here is a confirming that this recount is almost

16   complete.  It is on time.  It is going smoothly.  It is

17   being run exactly as the state statutes called for it to

18   be run, which is how the United States Constitution

19   allows for elections to be run.  I think that the only --

20   really the only way that this recount will not be done,

21   be effective and be valid is if the Court enjoins it, and

22   the Court should not enjoin it on absolutely nothing but

23   speculation.  There's no evidence of a problem here on

24   the either the timeline or the mechanics.  I think that's

25   not sufficient for standing, let alone irreparable harm.

1    We can move past equal protection.  With the due

2  process arguments made here, this is not a vote-denial

3  case.  The cases they cite are sort of in the

4  neighborhood of vote delusion, but vote delusion has

5  never been extended to hypothetical concerns of this

6  nature and they shouldn't be.  There's just no indication

7  that anything is not on track to have this done properly

8  and under the state statutes.

9    There's a strong public interest here because the

10  Constitution does permit the states to prescribe the

11  procedures to have this done.  And what we're balancing

12  here on the balancing test is that strong public interest

13  against nothing but speculation, no real world problem,

14  nothing even for standing let alone harm, and the

15  injunction should be denied.

16    THE COURT:  All right.  Mr. Morley, what is it

17  that you want now?  It seems to me that all you're asking

18  for me to do is try to clip Ms. Stein's wings as far as

19  any future appeals or challenges to the Wisconsin

20  election, actions which she hasn't taken or even

21  indicated that she will take.  What do you want?

22    MR. MORLEY:  Yes, Your Honor.  So there's two

23  aspects to the request that we're seeking in light of the

24  developments that have occurred:  The first being as of

25  right now, there are results in from 47 out of 82

counties.   There are still 35 counties left.   Co-counsel

is absolutely correct that as of right now, there's no

concrete evidence that there's going to be a problem

beyond the simple fact that this recount is proceeding at

quadruple the rate of the last statewide recount that we

had where counties are being compelled to count twice as

many ballots in half the time.

THE COURT:  I get that.

MR. MORLEY:  So if they're --

THE COURT:  They're plenty fast.  Go ahead.  I

understand.

MR. MORLEY:  So part of -- so insofar as we're

seeking relief with regard to the recount itself, it's a

prophylactic measure.  If the problem does arise, by the

time a problem does arise it will be too late for us to

come back, the safe harbor risks being blown.  And so in

order to prevent that, we've asked the Court either to

stop the recount immediately in order to ensure the safe

harbor won't be blown because we know the point of the

recount, the reason for the request of the recount were

baseless allegations that there were hacking and there

were insecurities.  There was fraud.  Based on the

results that we've seen in the recount to date, there's

been virtually no change in the outcome of the election.

There's not going to be --

1          THE COURT:  I get that.  Why should I stop the

2     -- so I should stop the recount because there might be a

3     problem.  And if there's a problem, there's not time to

4     come back to court and get it fixed.  Okay.  What else

5     have you got?

6          MR. MORLEY:  The bigger issue is if the recount

7     proceeds according to its current specified deadline

8     where it ends by 8 p.m. on Monday, the very next day is

9     the safe harbor deadline.  Wisconsin law grants five

10    business days for it generating a new controversy, for

11    generating a new challenge and appeal of the recount.

12    And if the recount is allowed to proceed and in the

13    absence of any further judicial action such as requiring

14    that this court approve any challenge to make sure that

15    it's good faith nonfrivolous, it would be solely in the

16    control --

17         THE COURT:  Why this court?

18         MR. MORLEY:  Because this is where we're arguing

19    that the right to vote is protected by the Federal Due

20    Process Clause.  The Fourteenth Amendment --

21         THE COURT:  That would be your appeal.

22         MR. MORLEY:  Excuse me, Your Honor?

23         THE COURT:  That would be your challenge to it.

24         MR. MORLEY:  Well, by eliminating the safe

25    harbor, which is what a recount runs the risk of doing,

an appeal of the recount, if an appeal of the recount is

allowed to commence, it runs the risk of destroying the

safe harbor protection which does dilute the value of the

vote, which does --

THE COURT:  First of all, I don't understand

that that is what would happen.  If there were further

appeal, we could investigate this election for months and

months and months, but that wouldn't affect the safe

harbor or the vote of the Electoral College or who's

president.  It would just mean that later on we would

continue to find out if there were some malfeasance or

fraud or errors in this election, but it wouldn't stop

the Electoral College from electing Mr. Trump as the

President.

So it would just provide that we would continue to

investigate the election, but it wouldn't affect the

integrity of the election for President.  The country

would continue to proceed, Mr. Trump would take office,

and that would be fine.  But then we could continue.  If

there were an appeal, which at this point is rank

speculation, then we would continue to investigate the

election.  I don't see how that risks the safe harbor in

the least.

MR. MORLEY:  The safe harbor isn't about whether

the electors can vote.  Your Honor is absolutely correct

```
1   that regardless of whether of whether an election
2   appeal -- an appeal of the recount occurs, Your Honor is
3   absolutely correct.  The electors can still vote.  They
4   will cast their votes for President-Elect Trump.  The
5   purpose of the safe harbor -- the safe harbor comes into
6   effect on January 6 when it comes time for Congress to
7   count the electoral votes.  If an appeal is lodged to the
8   recount such that there is a controversy pending on that
9   safe harbor date, on December 13, when it comes time for
10  Congress to count the votes, Wisconsin's electoral votes
11  are no longer treated as "conclusive" under 3 U.S.C. 5
12  and so votes that if there weren't a recount or if the
13  recount were done by the 13th with no judicial challenge,
14  votes that would be definitive, votes that would be
15  conclusive that would not be subject to objection, that
16  the voters of Wisconsin would have the guarantee are
17  counted in accordance with --
18          THE COURT:  I'm not sure I agree with that.  I
19  don't see that.  Mr. Murphy, what happens?  This recount
20  is done on Monday.
21          MR. MURPHY:  Right.
22          THE COURT:  On Tuesday is the safe harbor date.
23          MR. MURPHY:  That's right.
24          THE COURT:  Even if there were an appeal,
25  Wisconsin's electoral votes get counted.  Am I right?
```

1          MR. MURPHY:  That is right.  And I'll be brief

2     because all the points you've raised are exactly right.

3     But the certification will happen by the safe harbor

4     deadline and that is actually what triggers the five-day

5     appeal.  That's the timeline that's contemplated by the

6     statutes.  So you're absolutely right.  There will be a

7     certification.  The votes will be sent to Congress.

8     There will be no problem.

9          THE COURT:  I'm just not seeing it.

10          MR. MORLEY:  If I can refer Your Honor to 3

11     U.S.C. Section 5, for the safe harbor to be satisfied the

12     standard is that there must be a final determination of

13     any controversy or contest regarding the electors.  So if

14     the recount is done by Monday, that's excellent and

15     that's fine.  That's not going to call any independent

16     problems.  But if an appeal is then lodged to the

17     recount, which seems virtually inevitable, especially

18     since Wisconsin uses the same exact standard, aggrieved

19     candidate for lodging an appeal to the recount as was the

20     Michigan standard for seeking a recount which Dr. Stein

21     invoked, 3 U.S.C. 5 says in order to receive the

22     protections of the safe harbor, there must be a final

23     determination of any controversy or contest by that safe

24     harbor date.

25          Here the deadline for starting a controversy or

contest about the recount would be Monday, the day before

the safe harbor date.  So Dr. Stein wouldn't even have to

initiate the challenge until the safe harbor were already

over.  And so by that time, no matter what happens to the

appeal, there's -- there is a problem that the safe

harbor could be blown, which means then votes that would

be treated as conclusive if the safe harbor were

satisfied are now subject to review and objection when

Congress counts them in January.

THE COURT:  Yeah.  Do you have any other

authority other than your reading of that part of the

federal code?

MR. MORLEY:  Well, Your Honor, there's the fact

that --

THE COURT:  Because it is -- we often have a

final determination in many things that this court does

and then there are subsequent appeals.  It doesn't mean

that there wasn't a final determination.  When it gets

done, there'll be a final decision.  Wisconsin's

electoral votes are going to count -- I mean at this

point, I'm not persuaded by any submission that you have

made that Wisconsin's electoral votes are not going to be

counted and it predicated all on rank speculation anyway

about what might happen later.

MR. MORLEY:  Well, if Your Honor interprets the

1  statute that way, if that's Your Honor's interpretation

2  of 3 U.S.C. 5, we would wholeheartedly embrace that.  If

3  the Court is interpreting Section 5 to say that any

4  appeal of the recount would not call into question

5  Wisconsin's votes, would not waive the safe harbor

6  protections that Wisconsin voters are entitled to, we

7  would wholeheartedly embrace that interpretation.

8          THE COURT:  That's my understanding of what

9  would happen.  Now again, my interpretation of that is,

10  you know, it's like I'm not running Wisconsin's Electors

11  when they meet and I'm not running the Electoral College.

12  But my understanding is that if there's an ongoing

13  investigation about whether the election aggrieved any

14  candidate or whether there was some question about the

15  integrity, that election could continue.  But that it

16  wouldn't stop the Electoral College from meeting,

17  Wisconsin's votes being counted, and the President taking

18  office.  This is -- it's like -- and it's all based on

19  speculation about what some aggrieved candidate might do.

20  So I don't know, is that it?  Is that all you want?  Is

21  there anything else?

22          MR. MORLEY:  No, Your Honor.  Those are our --

23  we've withdrawn our Equal Protection claim and that was

24  our Due Process claim.

25          THE COURT:  All right.  I've heard enough.  The

only question that I have is whether this case has to be
dismissed for lack of standing because it's clear that on
the merits I will deny your request for an injunction.
There is -- at the time this case was filed, there was, I
think, a very questionable reading of *Bush v.* Gore as it
applies to Wisconsin's recount procedure.  I don't think
*Bush v. Gore* says that the intent of the voter is a
prohibited concern.  I think *Bush v. Gore* endorses the
idea that the intent of the voter is the starting point
and the touchstone of vote counting.  *Bush v. Gore* itself
made clear that it was addressing the particular concerns
that were caused by the punch card voting system that was
used in Florida which was then subject to very
inconsistent procedures during the recount.  So none of
that seemed to apply to Wisconsin's election or to
Wisconsin's recount because we don't have that kind of
system and we didn't have the kind of inconsistent
treatment during the recount.

All of the challenges that you originally made to
the idea of the way the Wisconsin statutes counted votes
applied to the original election as well as to the
recount.  So if on the basis of your initial presentation
the recount were invalid, the original canvass would have
been invalid.  And so your case on the equal protection
grounds was dead on arrival.

1       Also the State very articulately pointed out very

2  serious questions about the standing that your clients

3  had to even bring this suit.  It was not clear at all

4  from your initial submissions that they had really

5  suffered the kind of concrete and particularized error or

6  harm that supports a federal case.  I note that at the

7  outset the question of whether a candidate is entitled to

8  a recount is really fundamentally a question of state

9  law; that states are the ones that articulate and set the

10 rules for when a candidate is entitled to a recount.

11 Apparently there's challenge to the manner of the

12 recount, but there's apparently no question about

13 Ms. Stein's entitlement to the recount.

14      Wisconsin laws says that a candidate can ask for a

15 recount.  If the election is extremely close, the state

16 will pay for it.  If it's not that close, the candidate

17 has to pay for it.  She paid for it.  She got the

18 recount.  The recount was conducted substantially the

19 same way that the initial canvass was conducted and it

20 just didn't have the kind of *Bush v. Gore* problems.  And

21 it's not clear to me that your clients had anything other

22 than a generalized disagreement with Wisconsin's recount

23 procedures.  So I question whether you have standing to

24 bring this case in the first place.

25      I'm not going to dismiss it for that reason today.

1   I have the State's submission.  You chose not to respond

2   to the standing argument.  So I'll make a decision about

3   whether this case is dismissed for lack of standing.  But

4   even assuming that you had standing, I think that the

5   relief you asked for here is so clearly unwarranted that

6   there's no question that I have to deny the request for

7   the injunction stopping the recount.

8       Even at the beginning of the recount there really

9   was no indication that there was any real problem with

10  the recount.  The State was unequivocal.  They were going

11  to do it expeditiously.  They would get it done more

12  quickly.  They simply weren't under the compulsion to

13  finish by a deadline in the *Prosser-Kloppenburg* recount,

14  so that is not the measure of how long it takes to do a

15  recount.  The State was under the burden to do it more

16  quickly this time because it was a presidential election.

17  Mr. Haas said that the recount would be done on time and

18  we're standing here now a few days away from the end and

19  the recount is 80 some percent complete; by your own

20  admission that there has been no irregularity in the

21  manner of doing the recount.  So the recount looks like

22  it's going, as the State said, smoothly, competently.

23  And I note that the recount provision is not an attack on

24  the integrity of the election.  The recount is an

25  inherent part of what ensures the integrity of elections.

1    If there's a doubt -- if there's a close election and

2    there's a doubt about it, you double-check your work to

3    make sure that there weren't errors.

4        Now, there may be errors that would evade detection

5    during the recount procedure, but the recount is designed

6    to make sure that at least all of the obvious sources of

7    error are identified and corrected before the vote is

8    finally certified.  So there's nothing about this recount

9    that impugns the integrity of Wisconsin's elections at

10   all.  It is, in fact, an inherent part of the system that

11   the State has developed to ensure the integrity of

12   elections.

13       As far as the challenge or the difficulty with the

14   state safe harbor, I just don't -- I just don't see that.

15   I don't know what's going to happen as a result of the

16   recount, whether there's going to be a further appeal and

17   further investigation.  As I said, it's possible that a

18   state could spend more time investigating the integrity

19   of its election after the ballots are or the election is

20   certified.  That only makes sense.  You have to very

21   promptly move to make the results final and certified and

22   live with the result.  But that doesn't mean that you

23   can't investigate the election electoral process after

24   that.  Who knows.  Maybe we'll be spending months dealing

25   with the integrity of this election, but it's not going

1  to have any impact on whether the Electoral College meets

2  or who takes office.

3      I think everybody acknowledges that there's

4  virtually no chance that the recount is going to change

5  the results of the election at this point, so that's

6  really not an issue.  I think that we're going to have

7  ongoing discussions for quite some time about the

8  integrity of the 2016 election.  I think that Mr. Trump

9  himself has continued to make an issue of that.  He's

10  made claims about voter fraud in certain states.  He's

11  made claims about the mandate and the landslide that --

12  as a result.  So the count matters.  I think that we're

13  probably going to be talking about this for a long time.

14      But it's clear as crystal to me that I don't have a

15  basis for stopping the recount.  It's clear enough too

16  that as far as the balance of harms go, the harm would be

17  to the Election Commission and to candidate Stein if I

18  were to stop the election because then it definitely

19  wouldn't be done in time for the safe harbor -- to meet

20  the safe harbor provision under federal law.

21      So with that, we're finished today.  The motion for

22  injunction is denied and I'll issue a decision that

23  indicates whether the case is dismissed for lack of

24  standing within the next few days.

25      Thank you all.

1          MR. MURPHY:  Thank you.

2          MS. GREENBERGER:  Thank you, Your Honor.

3       (Proceedings concluded at 9:28 a.m.)

4

5

6                          *  *  *  *  *

7       I, LYNETTE SWENSON, Certified Realtime and Merit

8    Reporter in and for the State of Wisconsin, certify that

9    the foregoing is a true and accurate record of the

10   proceedings held on the 9th day of December 2016 before

11   the Honorable James D. Peterson, District Judge for the

12   Western District of Wisconsin, in my presence and reduced

13   to writing in accordance with my stenographic notes made

14   at said time and place.

15   Dated this 9th day of December 2016.

16

17

18                          /s/_____

19                          Lynette Swenson, RMR, CRR, CRC
                             Federal Court Reporter
20

21

22

23   The foregoing certification of this transcript does not
     apply to any reproduction of the same by any means unless
24   under the direct control and/or direction of the
     certifying court reporter.
25